IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BUNTING GRAPHICS, INC. d/b/a BUNTING ARCHITECTURAL METALS, <br><br>    Plaintiff/Counter-Defendant, <br><br>v. <br><br>THE WHITING-TURNER CONTRACTING COMPANY, <br><br>    Defendant/Counterclaimant. <br><br>THE WHITING-TURNER CONTRACTING COMPANY, <br><br>    Third-Party Plaintiff, <br><br>v. <br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, <br><br>    Third-Party Defendant. | Civil Action No. 19-cv-2323-LKG <br><br> Dated:  October 25, 2022 |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

    This civil action involves breach of contract, quantum meruit, and unjust enrichment claims and counterclaims related to a subcontract for the construction of a high-rise, mixed use building located in Arlington, VA (the "Subcontract") entered into by plaintiff, Bunting Graphics, Inc., ("Bunting") and defendant, The Whiting-Turner Contracting Company ("Whiting-Turner").  *See generally* Compl., ECF No. 1; Countercl., ECF No. 11.

    A trial on the parties' claims and counterclaims is scheduled to begin on December 5,

2022.  *See* ECF No. 120.

      In advance of trial, Bunting has filed:  (1) a motion to exclude the testimony of Whiting-Turner's proposed expert witness, Paul Brough, pursuant to Fed. R. Evid. 702 and 703 and (2) a motion to exclude the testimony of Whiting-Turner's proposed expert witness, Brian Kent, pursuant to Fed. R. Evid. 702.  *See* Bunting 1st Mot., ECF No. 94; Bunting 1st Mem., ECF No. 94-1; Bunting 2d Mot., ECF No. 95; Bunting 2d Mem., ECF No 95-1.

      Whiting-Turner has also filed:  (1) a motion to exclude or, in the alternative, to supplement, the expert disclosures of Bunting's expert, Joshua Bunting; (2) a motion to exclude the testimony of Bunting's forensic engineering expert, Matthew Innocenzi; and (3) a motion to exclude evidence and testimony regarding Change Order Request Nos. 10-5, 009-1 and 019.  *See* Whiting-Turner 1st Mot., ECF No. 91; Whiting-Turner 1st Mem., ECF No. 91-1; Whiting-Turner 2d Mot., ECF No. 93; Whiting-Turner 2d Mem., ECF No. 97-1; Whiting-Turner 3d Mot., ECF No. 97.

      These pre-trial motions have been fully briefed.  *See generally* Whiting-Turner 1st Resp., ECF No. 99; Whiting-Turner 2d Resp., ECF No. 98; Whiting-Turner 1st Reply, ECF No. 116; Whiting-Turner 2d Reply, ECF No. 117; Whiting-Turner 3d Reply, ECF No. 115; Bunting 1st Resp., ECF No. 100; Bunting 2d Resp., ECF No. 102; Bunting 3d Resp., ECF No. 101; Bunting 1st Reply, ECF No. 112; Bunting 2d Reply, ECF No. 113.  The Court held a hearing on these motions on October 20, 2022.  ECF No. 119.

      For the reasons that follow, the Court:  (1) **DENIES** Bunting's motion to exclude the testimony of Paul Brough; (2) **DENIES** Bunting's motion to exclude the testimony of Brian Kent **WITHOUT PREJUDICE**; (3) **GRANTS** Whiting-Turner's motion to supplement the expert disclosures for Joshua Bunting; (4) **DENIES** Whiting-Turner's motion to exclude the testimony of Joshua Bunting **WITHOUT PREJUDICE**; (5) **GRANTS** Whiting-Turner's motion to exclude the testimony of Matthew Innocenzi; and (6) **GRANTS-in-PART and DENIES-in-PART** Whiting-Turner's motion to exclude evidence of Change Order Request Nos. 019, 009-1 and 10-5.

## II.   FACTUAL BACKGROUND[1]

In this action, Bunting alleges that Whiting-Turner materially breached the Subcontract by, among other things: (1) wrongfully issuing a termination notice; (2) wrongfully terminating the Subcontract; (3) negligently managing the construction project at issue in this case; (4) interfering with Bunting's work under that project; and (5) failing to pay Bunting in a timely manner, or at all, for its work. *See generally* Compl.

Whiting-Turner counters that it did not breach the Subcontract and argues that Bunting materially breached the Subcontract by, among other things: (1) failing to provide sufficient skilled supervisors and workmen; (2) failing to cure various defaults under the Subcontract; and (3) failing to deliver various project materials. *See* Countercl. at ¶¶ 6-35.

In addition, Whiting-Turner asserts a counterclaim against third-party defendant, Travelers Casualty and Surety Company of America ("Travelers")—which issued the Performance Bond on behalf of Bunting for the construction project at issue—alleging that Travelers breached the Performance Bond by failing to perform its obligations under the Performance Bond. *See id.* at ¶¶ 36-42.

<u>Bunting's Witnesses</u>

Relevant to the pending pre-trial motions, Bunting intends to present, among others, the following two witnesses at trial:

<u>Joshua Bunting</u>: Mr. Bunting is the President of Bunting and he has been designated as a fact and expert witness on multiple topics. *See* Whiting-Turner 1st Mem. at 1. Bunting has provided a disclosure statement with regard to Mr. Bunting that provides as follows:

> Bunting designates Mr. Bunting as an expert on (i) the fabrication, the assembly and the installation of metal panels, metal screens and louvers/grilles on a building façade for construction projects; (ii) the coordination, sequence and interrelation of work performed by other building façade subcontractors and how such work that is defective, deficient and/or incomplete may have on the installation of metal panels, metal screens and/or louvers/grilles; (iii) construction/project management and quality control regarding building façade construction work; (iv)

---

[1] The facts recited in this Memorandum Opinion and Order are taken from Bunting's complaint ("Compl.") and Whiting-Turner's counterclaim and third-party complaint ("Countercl.").

> construction schedules and sequencing regarding building façade construction work; (v) the entitlement and the quantum regarding extra work relating to building façade construction work; and (vi) payment applications and contract accounting on construction projects.

Whiting-Turner 1st Mot. Ex. A at 3.  Bunting has also provided a supplemental disclosure statement for Mr. Bunting, which states, in part, that:

> Mr. Bunting is expected to testify and provide opinion(s) (1) regarding Bunting's and The Whiting-Turner Contracting Company's ("Whiting-Turner") obligations and responsibilities under the Subcontract, including Bunting's scope of work and the Project schedules; (2) that Whiting-Turner failed to properly plan, manage, coordinate and perform its obligations as required by the Subcontract; (3) that Whiting-Turner failed to ensure that its building façade subcontractors performed their scopes of work in a timely and/or proper manner; (4) that the work installed and/or performed by Whiting-Turner's building facade subcontractors included defects and/or deficiencies with the framing, waterproofing, precast concrete panel and window work on the Project, resulting in cost and schedule impacts to Bunting; and (5) that Whiting-Turner failed to perform proper quality control of the project's building façade work and failed to adequately supervise its building façade subcontractors.  Mr. Bunting is also expected to testify regarding entitlement and quantum on Bunting's damages sought in this litigation, including Bunting's unpaid Subcontract work and Bunting's unpaid change order requests as stated in Bunting's interrogatory answers. Mr. Bunting is further expected to testify regarding entitlement and quantum on Whiting-Turner's damages sought in this litigation.

Whiting-Turner 1st Mot. Ex. K at 3.  In addition, Bunting and Travelers have provided the following disclosure statement in support of Mr. Bunting's designation as a rebuttal expert:

> Bunting also anticipates that Mr. Bunting may also serve as a rebuttal expert to the reports of Paul Kent and Peter Brough that were submitted on March 26, 2021 by Whiting-Turner in this matter.  Mr. Bunting's rebuttal opinions would address the same topics of expertise and have the same bases of opinions as those expressly identified in Bunting's March 26, 2021 Initial Expert Disclosures. Therefore, Bunting hereby incorporates by reference herein Bunting's March 26, 2021 Initial Expert Disclosures as it relates to Mr. Bunting.  In addition, Mr. Bunting will base his expert opinions on his review of the expert reports of Paul Kent and Peter Brough that were submitted on March 26, 2021, by Whiting-Turner in this matter.

Whiting-Turner 1st Mot. Ex. C at 3.

    <u>Matthew Innocenzi</u>:  Mr. Innocenzi is a forensic accountant who proposes to offer the following opinions at trial:

> 1. That Bunting's work was hampered by factors caused by others and beyond its control, including: Changes to the design that necessitated multiple revisions and changes to Bunting's shop drawings; site logistics and challenges that necessitated a timed release of fabricated panels; sequencing and coordination issues with other trades working on the building that impeded, and in some cases, restricted Bunting from accessing swing stages that were needed to install their work; underlying work performed by other trades that was incomplete or improper at the time when Bunting was scheduled to perform its work; and investigative and corrective work to underlying construction performed after Bunting installed its work.
>
> 2. That Whiting-Turner did not perform its contractual duties. Examples include: That Whiting-Turner did not abide by the process outlined in the subcontract for disputed work; that Whiting-Turner did not adequately or properly sequence and coordinate trades to prevent scheduling conflicts and other impacts; that Whiting-Turner did not take appropriate action with respect to QA/QC issues associated with waterproofing; and that Whiting-Turner did not act in good faith with respect to an agreement between Bunting and Whiting-Turner that allowed for Bunting to complete fabrication of the ACM panels, but withdraw its labor forces from the project.
>
> 3. That the two notices of default, supplemental labor notice, and termination notice issued by Whiting-Turner to Bunting were unjust and based on incorrect information.

Whiting-Turner 3d Mot. Ex. 2.

<u>Whiting-Turner's Witnesses</u>

Whiting-Turner intends to present the following two expert witnesses at trial:

<u>Paul Brough</u>: Mr. Brough is a scheduling consultant expert who proposes to offer the following opinions at trial:

> 1. That Bunting was significantly behind schedule for the installation of the ACM Panels based on the Project Schedule when the notice of default was issued by Whiting-Turner to Bunting on September 12, 2018. At that time, the predecessor work to the installation of the ACM Panels was on schedule and did not delay Bunting's installation of the ACM Panels. Bunting was significantly behind schedule as to the installation of the ACM Panels on September 12, 2018, because Bunting failed to progress this work.
>
> 2. That between September 12, 2018, and January 15, 2019, Bunting's installation of the ACM Panels continued to be significantly behind the Project Schedule for this work. The predecessor activities for Bunting's

5

>work remained on schedule and did not delay Bunting's installation of the ACM Panels and perforated panels. Bunting remained behind schedule because of Bunting's failure to progress this work.

Bunting 1st Mot. Ex. A at 2.

Brian Kent:  Mr. Kent is a construction management expert who proposes to offer the following opinions at trial:

>1.  That Bunting failed to follow the "corkscrew" method – a floor-by-floor spiral approach – for the performance of its work as part of the construction of the exterior skin of the building, contrary to the requirements for the Project and standard industry practices, thereby causing Bunting's work to be inefficient and delayed.
>
>2. That, during the performance of its work, Bunting always had areas available to progress its work and the ability of Bunting to progress its work was not impacted by the work of predecessor trades or quality control testing, including testing and repair of the waterproofing for the exterior of the building.
>
>3.  That Bunting's failure to follow the corkscrew method and to properly manage its work and timely provide materials necessary for its work resulted in Bunting's work falling significantly behind the Project schedule.

Bunting 2d Mot. Ex. A at 2-4.

### III.   LEGAL STANDARDS

#### A.   Motions *In Limine*

Motions *in limine* aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial.  *See Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citations omitted).  "A motion *in limine* to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 470 (S.D.N.Y. 2005) (internal citations omitted).  The Court has wide discretion in rulings governing trial, including whether to preclude or admit evidence or to prohibit comment, arguments, or questioning.  *See, e.g.*, *Herring v. New York*, 422 U.S. 853, 862 (1975) ("The presiding judge must be and is given great latitude in . . . ensur[ing] that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial . . . he must have broad discretion."); *see also United States v. Jones*,

6

356 F.3d 529, 535 (4th Cir. 2004) ("The decision to admit evidence at trial is committed to the sound discretion of the district court and is subject to reversal only if the court abuses that discretion.").

### B. Expert Testimony

The proponent of expert testimony "bears the burden of establishing its admissibility." *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 97 (D. Md. 2020). In this regard, Fed. R. Evid. 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has recognized that Fed. R. Evid. 702 requires district courts to perform a critical "gatekeeping" function concerning the admissibility of expert scientific evidence. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1998). Given this, it is the Court's responsibility to "'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597).

Under *Daubert*, a Fed. R. Evid. 702 evidentiary inquiry focuses on two threshold inquiries: reliability and relevance. *See Daubert*, 509 U.S. at 599. First, the "reliability" component requires that this Court "ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'" *Nease*, 848 F.3d at 229 (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). Second, the "relevance" component requires that the Court find that the proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. And so, "if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021).

In addition, Fed. R. Evid. 704(a) permits the Court to admit expert testimony that "embraces an ultimate issue" to be decided by the trier of fact. Fed. R. Evid. 704(a). But, the United States Court of Appeals for the Fourth Circuit has held that "testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) (citations omitted). And so, expert witnesses may not testify about the proper interpretation of applicable domestic law. *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986), *abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622 (1988).

### C.   Fed. R. Civ. P. 26(a)(2)(C)

Lastly, Fed. R. Civ. P. 26(a)(2)(C) requires that the disclosure statement for a witness who does not need to provide a written report must include "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705, and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). If a party fails to satisfy these disclosure requirements, the party is "not allowed to use that information or witness to supply evidence on a motion, at a hearing or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

## IV.   LEGAL ANALYSIS

The parties have filed several pre-trial motions related to the evidence and proposed testimony in this case. *See generally* Bunting 1st Mot.; Bunting 2d Mot.; Whiting-Turner 1st Mot.; Whiting-Turner 2d Mot.; Whiting-Turner 3d Mot.

First, Bunting has filed: (1) a motion to exclude the testimony of Whiting-Turner's proposed expert witness, Paul Brough, pursuant to Fed. R. Evid. 702 and 703 and (2) a motion to exclude the testimony of Whiting-Turner's proposed expert witness, Brian Kent, pursuant to Fed. R. Evid. 702. *See* Bunting 1st Mot.; Bunting 2d Mot.

In addition, Whiting-Turner has filed: (1) a motion to exclude or, in the alternative, to supplement, the expert disclosures of Bunting's expert, Joshua Bunting; (2) a motion to exclude the testimony of Bunting's forensic engineering expert, Matthew Innocenzi; and (3) a motion to exclude evidence and testimony regarding Change Order Request Nos. 10-5, 009-1 and 019. *See* Whiting-Turner 1st Mot.; Whiting-Turner 2d Mot.; Whiting-Turner 3d Mot.

For the reasons that follow, the Court: (1) **DENIES** Bunting's motion to exclude the testimony of Paul Brough; (2) **DENIES** Bunting's motion to exclude the testimony of Brian Kent **WITHOUT PREJUDICE**; (3) **GRANTS** Whiting-Turner's motion to supplement the expert disclosures for Joshua Bunting; (4) **DENIES** Whiting-Turner's motion to exclude the testimony of Joshua Bunting **WITHOUT PREJUDICE**; (5) **GRANTS** Whiting-Turner's motion to exclude the testimony of Matthew Innocenzi; and (6) **GRANTS-in-PART and DENIES-in-PART** Whiting-Turner's motion to exclude evidence of Change Order Requests Nos. 019, 009-1 and 10-5.

### A. The Court Declines To Exclude The Testimony Of Paul Brough

As an initial matter, Bunting argues without persuasion that the Court should exclude the testimony of Whiting-Turner's scheduling consultant expert, Paul Brough, because: (1) Mr. Brough solely relies upon the expert report of Brian Kent— another expert witness in this matter—to form his opinions and (2) Mr. Brough did not perform an independent analysis to reach his proffered opinions. Bunting 1st Mem. at 4-13.

Fed. R. Evid. 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*See* Fed. R. Evid. 702. Relevant to Bunting's motion to exclude the testimony of Mr. Brough, the "reliability" component of Rule 702 requires that this Court "ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'" *See Nease*, 848 F.3d at 229 (citation omitted). And so, the Court must exclude Mr. Brough's expert testimony if it is unreliable. *See id.*

A careful review of Mr. Brough's expert report shows that his opinions in this case rest upon a reliable foundation. Mr. Brough proposes to offer two expert opinions:

9

>1. That Bunting was significantly behind schedule for the installation of the ACM Panels, based on the Project Schedule, when Whiting-Turner issued a notice of default to Bunting on September 12, 2018; and
>
>2. That, between September 12, 2018, and January 15, 2019, Bunting's installation of the ACM Panels continued to be significantly behind the Project Schedule for this work, and Bunting remained behind schedule, because of Bunting's failure to progress this work.

Bunting 1st Mot. Ex. A at 2.

As Whiting-Turner correctly observes in its motion to exclude, Mr. Brough considered the expert report of another expert witness in this case, Brian Kent, in preparing his expert report. *See id.* at 10. But, the Brough Expert Report makes clear that Mr. Brough also considered and relied upon other information to form his opinions, including: (1) the Subcontract at issue in this case; (2) the parties' project schedule; (3) various photographs of the project; (4) information from meetings between the parties; and (5) his own personal knowledge of the project. *See id.*

Given this, Mr. Brough's expert opinions are not based solely upon Mr. Kent's expert report, as Whiting-Turner suggests. *See* Bunting 1st Mem. at 5-10. And so, the Court is satisfied that Mr. Brough's proposed expert testimony will be sufficiently based on facts and data in this case and that these opinions are the result of an independent analysis. *See* Fed. R. Evid. 702.

Bunting's argument that Mr. Brough's testimony should be excluded, because he did not conduct a "Critical Path" analysis of the project, is also unavailing. *See* Bunting 1st Mem. at 10-13. The Brough Expert Report makes clear that Mr. Brough's proposed testimony is the product of reliable principles and methods for analyzing the progress of the ACM panel installation. Bunting 1st Mot. Ex. A at 2-9. He has also reliably applied these principles and methods to the facts of the case. *See id.* at 3-9.

Notably, the Brough Expert Report contains a "schedule analysis" that first determines the Baseline Project Schedule "setting forth [Bunting's] required period of performance and work durations and those of predecessor activities to the installation of the ACM panels." *See id.* at 2. The report then reviews Bunting's actual performance according to certain schedule updates, to determine whether Bunting's installation was on schedule. *See id.* at 3-9.

Given this, the Court is satisfied that Mr. Brough's proffered expert opinions are "based on scientific, technical, or other specialized knowledge and not on belief or speculation,"

10

consistent with Rule 702. *See Nease*, 848 F.3d at 229 (citation omitted). And so, the Court declines to exclude his testimony.

### B.     The Court Declines To Exclude The Testimony Of Brian Kent

Bunting's motion to exclude the expert testimony of Whiting-Turner's construction management expert, Brian Kent, is also problematic.

Bunting seeks to exclude the expert testimony of Mr. Kent on multiple grounds, including that: (1) Mr. Kent is not qualified to testify as a "metal panel expert;" (2) Mr. Kent used an unreliable methodology in reaching his conclusions; (3) Mr. Kent's testimony should be excluded as unhelpful and/or irrelevant; and (4) Mr. Kent relied upon unreliable and/or undisclosed facts in reaching his conclusions. *See* Bunting 2d Mem. at 4-15.

But, a close review of Mr. Kent's expert report shows that each of these arguments is unavailing. As previously stated, Fed. R. Evid. 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Here, there can be no genuine dispute that Mr. Kent is qualified to testify as an expert in this case. The Fourth Circuit has held that an expert may testify on the basis of either "experience alone," or "experience in conjunction with other knowledge, skill, training or education." *U.S. v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007). The parties do not dispute that Mr. Kent possesses general expertise in the area of construction management, as is made clear by the curriculum vitae submitted with the Kent Expert Report showing that he has been a construction manager for more than 400 projects. *See* Bunting 2d Mot. Ex. A at 6; *see generally* Bunting 2d Mem.; Whiting-Turner 2d Resp.

A careful review of the Kent Expert Report shows that the three topics he proposes to opine about in this case concern the management and scheduling of Bunting's construction work. *See* Bunting 2d Mot. Ex. A at 2. These are central issues related to the breach of contract claims

11

and counterclaims in this case.[2]

Mr. Kent's proposed testimony is also relevant to this dispute. A review of the Kent Expert Report shows that he would opine that Bunting's failure to follow the corkscrew method and to properly manage its work resulted in Bunting falling significantly behind in its work. *See id.* at 2-6. Because this testimony would tend to make the facts concerning Bunting's performance under the Subcontract more or less probable, it is also relevant to the claims and counterclaims in this case. *See* Fed. R. Evid. 401.

Mr. Kent's proposed testimony will also aid the Court in understanding the evidence in this case, because Mr. Kent proposes to connect construction industry standards to the facts of the case in reaching his opinions. *See* Bunting 2d Mot. Ex. A at 2-4; Fed. R. Evid. 702.

A careful review of the Kent Expert Report also makes clear that Mr. Kent's proposed testimony is based on sufficient facts and data, because his opinions are based upon his personal observations of the project site, as well as project documents, reports and notes. *See* Bunting 2d Mot. Ex. A at 6.

In addition, the Court is satisfied that Mr. Kent's testimony is the product of reliable principles and methods, and that he reliably applies these principles and methods to the facts of the case. The Kent Expert Report states that Mr. Kent relied upon construction industry standards for the construction of a building's exterior skin, and that he applied these standards, along with his personal observations, to conclude that Bunting failed to properly manage the project. *See id.* at 2-6.

The Court is also not persuaded by Bunting's argument that Mr. Kent's testimony should be excluded, because Whiting-Turner did not produce certain "flash notes" or "WT logs" relied upon by Mr. Kent in his expert report.[3] Whiting-Turner can correct this failure to disclose by promptly producing the flash notes and logs to Bunting in advance of trial. And so, the Court

---

[2] On page two of his report, Mr. Kent states that he proposes to opine about: (1) industry standards for the construction of the exterior skin of a building; (2) the impact of predecessor trades on Bunting's work progress; and (3) how Bunting's failure to follow certain methods resulted in work delays. *See* Bunting 2d Mot. Ex. A at 2. Given this, Mr. Kent need not be a "metal panel expert" to provide an expert opinion in this case, as Bunting suggests.

[3] The "flash notes" at issue are incorporated into the "Observations During Construction" section of Mr. Kent's report. *See* Bunting 2d Mot. Ex. A at 4-6.

will HOLD-in-ABEYANCE Bunting's motion to exclude Mr. Kent's expert testimony, pending its receipt and review of these documents.

### C. Bunting Must Supplement Its Expert Disclosures For Joshua Bunting

Turning to Whiting-Turner's motion to exclude, or in the alternative, to supplement, the expert disclosures of Joshua Bunting, the Court agrees with Whiting-Turner that Bunting has failed to sufficiently disclose the opinions to be offered by Mr. Bunting at trial.

Fed. R. Civ. P. 26 (a)(2)(C) requires that the disclosure statement for a witness who does not need to provide a written report must include "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705, and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). The current disclosure statements for Joshua Bunting do not satisfy this standard.

A careful reading of Bunting's disclosure statements for Joshua Bunting makes clear that none of these disclosures actually state *what* opinions Mr. Bunting will offer at trial. For example, the disclosure statements fail to state: (1) why Joshua Bunting believes that Whiting-Turner failed to properly plan, manage, or coordinate its obligations under the Subcontract; (2) the specific nature of the defects and deficiencies that Joshua Bunting proposes to testify about; or (3) why or how Whiting-Turner failed to perform proper quality control or to properly supervise its own subcontractors. This Court has held that a proper expert disclosure pursuant to Rule 26 must include a "precise description" of the opinion to be offered, rather than "vague generalizations." *See Meredith v. Int'l Marine Underwriters*, No. 10-837 2011 WL 1466436, at *7 (D. Md. Apr. 18, 2011). But, here, Bunting has provided only vague generalizations about the nature of Joshua Bunting's testimony.

Nonetheless, the Court believes that this defect may be promptly cured by allowing Bunting to provide a more detailed disclosure statement about the opinions to be proffered by Mr. Bunting. And so, Bunting must supplement its expert disclosures with regard to Mr. Bunting, to provide his opinions, and the factual bases thereof, regarding the following topics: (1) his opinion(s) regarding the nature of Bunting and Whiting-Turner's obligations under the Subcontract; (2) how Whiting-Turner failed to properly plan, manage, or coordinate its obligations under the Subcontract; (3) how Whiting-Turner failed to perform proper quality control or supervise its subcontractors; and (4) the specific nature of whatever construction

13

defects and/or deficiencies Mr. Bunting proposes to testify about at trial.

### D. The Court Will Exclude The Testimony Of Matthew Innocenzi

The Court next considers Whiting-Turner's motion to exclude the testimony of Matthew Innocenzi.

Whiting-Turner persuasively argues that the Court should exclude this testimony, because: (1) Mr. Innocenzi's testimony is not based on a methodology or analysis, as required by Rule 702 and (2) his expert report contains inadmissible legal conclusions.

As an initial matter, the Court is satisfied that Mr. Innocenzi is qualified to testify as an expert in the field of forensic engineering. But, a careful review of Mr. Innocenzi's expert report shows that his proposed testimony in this case is inadmissible for several reasons.

First, Mr. Innocenzi's testimony does not appear to be based upon any reliable scientific method or principle. Mr. Innocenzi's expert report states that he bases his opinions upon various project documents and the testimony of other witnesses in this case. *See* Whiting-Turner 3d Mot. Ex. 2 at 3-4. But, his expert report is devoid of any explanation regarding the methodology, analysis, or expert knowledge that he used to reach his opinions. *See generally id.*

For example, on pages 5-37 of his report, Mr. Innocenzi recounts Bunting's scope of work; the shop drawings used by Bunting; a summary of incomplete work associated impacts; the default notices issued by Whiting-Turner; various deposition testimony; and the termination letter issued by Whiting-Turner. *See id.* at 5-37. But, Mr. Innocenzi fails to connect any of this information to his opinions. *See generally id.* In addition, Mr. Innocenzi concludes in his expert report that in "the vast majority of instances, access [to the project] was hampered by masonry subcontractor [Calvert]." *See id.* at 13. But, again, he provides no analysis to explain why the lack of access hampered *Bunting's* work.[4] *See generally id.*

In addition, Mr. Innocenzi's opinion that Whiting-Turner did not "perform its contractual duties" or "act in good faith" also impermissibly seeks to offer a legal conclusion about the

---

[4] Mr. Innocenzi also opines that the notice of default letter issued to Bunting "was issued without merit." *See* Whiting-Turner 3d Mot. Ex. 2 at 19. But, again, he does not state a principle or methodology used to reach this conclusion. *See generally id.* While Mr. Innocenzi concludes that "changes and disruptions to [Bunting's] installation plan ultimately had significant repercussions on schedule and productivity," he again provides no principle or methodology to explain how he reaches this opinion. *See generally id.*

ultimate issue in this case—whether either party breached the Subcontract. *See id*. at 4. The Fourth Circuit has long reasoned that expert testimony that seeks to provide legal conclusions on the ultimate issues in a case is impermissible. *See McIver*, 470 F.3d at 561-62. And so, the Court must exclude Mr. Innocenzi's proposed expert testimony.

### E. The Court Will Exclude Evidence On Change Order Request No. 019

As a final matter, Whiting-Turner persuasively argues that evidence about Change Order Request No. 019 should be excluded at trial. This change order is the subject of a Partial Release Waiver of Lien Affidavit that the Court has previously held waives any claim for damages based on the change order. *See* Order dated March 3, 2022, ECF No. 83.

The Court is not, however, inclined to exclude evidence or testimony about Change Order Requests Nos. 10-5 and 009-1, as Whiting-Turner requests. *See* Whiting-Turner 2d Mot. at ¶ 10. There is a genuine dispute among the parties about whether Whiting-Turner has paid Bunting for the work associated with these two change orders. *See* Bunting 2d Resp. at 3; Whiting-Turner 2d Mot. at ¶ 3. Given this, the Court will allow Bunting to present testimony and evidence on these change order requests at trial.

### V. CONCLUSION

In sum, Bunting has not shown that the Court should exclude the testimony of Paul Brough or Brian Kent. But, Whiting-Turner must produce the "flash notes" and "WT logs" that Mr. Kent considered in preparing his expert opinions. Bunting must also supplement its disclosure statements regarding the expert testimony of Joshua Bunting to state the opinions that he will give at trial.

In addition, the Court will exclude the expert testimony of Matthew Innocenzi and evidence and testimony about Change Order Request No. 019.

And so, for the foregoing reasons, the Court:

1. **DENIES** Bunting's motion to exclude the testimony of Paul Brough;
2. **DENIES** Bunting's motion to exclude the expert testimony of Brian Kent **WITHOUT PREJUDICE**;
3. **GRANTS** Whiting-Turner's motion to supplement the expert disclosures of Joshua Bunting;

4. **DENIES** Whiting-Turner's motion to exclude the expert testimony of Joshua Bunting **WITHOUT PREJUDICE**;

5. **GRANTS** Whiting-Turner's motion to exclude the testimony of Matthew Innocenzi; and

6. **GRANTS-in-PART and DENIES-in-PART** Whiting-Turner's motion to exclude evidence and testimony regarding Change Order Request Nos. 019, 009-1 and 10-5.

In addition, the Court **DIRECTS** Bunting to supplement its expert disclosures for Joshua Bunting **on or before October 26, 2022**, to provide the following information:

> (1) his opinion(s) regarding the nature of Bunting and Whiting-Turner's obligations under the subcontract; (2) how Whiting-Turner failed to properly plan, manage, or coordinate its obligations under the subcontract; (3) how Whiting-Turner failed to perform proper quality control or supervise its subcontractors; and (4) the specific nature of whatever construction defects and/or deficiencies Mr. Bunting proposes to testify about at trial.

The Court also **DIRECTS** Whiting-Turner to produce the "flash notes" and "WT logs" that Mr. Kent considered in preparing his expert opinions, **on or before October 26, 2022**.

**IT IS SO ORDERED.**

                                             s/Lydia Kay Griggsby
                                             LYDIA KAY GRIGGSBY
                                             United States District Judge