**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| _____ ) | |
| Bunting GRAPHICS, INC. ) | |
| d/b/a Bunting ARCHITECTURAL ) | |
| METALS, ) | |
| ) | |
|      Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| THE WHITING-TURNER ) | Civil Action No. 19-cv-2323-LKG |
| CONTRACTING COMPANY, ) | |
| ) | Dated:  December 8, 2023 |
|      Defendant/Counterclaimant. ) | |
| _____ ) | |
| ) | |
| THE WHITING-TURNER ) | |
| CONTRACTING COMPANY, ) | |
| ) | |
|      Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| TRAVELERS CASUALTY AND ) | |
| SURETY COMPANY OF AMERICA, ) | |
| ) | |
|      Third-Party Defendant. ) | |
| _____ ) | |

**<u>MEMORANDUM OPINION</u>**

## I.    INTRODUCTION

This civil action involves breach of contract, quantum meruit and unjust enrichment claims and counterclaims related to a subcontract for the construction of a high-rise, mixed use building located in Arlington, VA (the "Subcontract") entered into by Plaintiff, Bunting Graphics, Inc.,

("Bunting") and Defendant, The Whiting-Turner Contracting Company ("Whiting-Turner"). *See generally*, ECF No. 1; ECF No. 11. A trial on the parties' claims and counterclaims is currently scheduled to begin on February 12, 2024. *See* ECF No. 120.

In advance of trial, the parties have filed five pre-trial motions related to the evidence for the trial in this matter and to recoup certain costs and expenses incurred during the reopened discovery period (the "Reopened Discovery Period") for this case. Specifically, Whiting Turner has filed: (1) a motion to strike/exclude the report, opinions and testimony of Randall Scholl (ECF No. 156) and (2) a motion to strike/exclude the testimony and opinion of Joshua Bunting (ECF No. 130). Bunting has filed: (1) a renewed motion *in limine* to exclude the expert testimony of Brian Kent (ECF No. 129) and (2) a renewed motion for sanctions to award costs for the Reopened Discovery Period (ECF No. 152). Lastly, Travelers has filed a motion for award of costs and attorneys' fees incurred during the Reopened Discovery Period (ECF No. 154).

These motions are fully briefed. ECF Nos. 129-31, 134, 152, 154, 156-63. The Court held a hearing on the motions on December 6, 2023. ECF No. 165.

For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** Whiting Turner's motion to strike/exclude the report, opinions and testimony of Randall Scholl (ECF No. 156); (2) **GRANTS-in-PART** and **DENIES in -PART** Whiting Turner's motion to strike/exclude the testimony and opinions of Joshua Bunting (ECF No. 130); (3) **GRANTS-in-PART** and **DENIES-in-PART** Bunting's renewed motion *in limine* to exclude expert testimony and opinions of Brian Kent (ECF No. 129); (4) **GRANTS-in-PART** and **DENIES-in-PART** Bunting's renewed motion for sanctions to award costs for the Reopened Discovery Period (ECF No. 152); and (5) **GRANTS** Travelers' motion for award of costs and attorneys' fees incurred during the Reopened Discovery Period (ECF No. 154).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.    Factual Background

In this action, Bunting alleges that Whiting-Turner materially breached a Subcontract by, among other things:  (1) wrongfully issuing a termination notice; (2) wrongfully terminating the Subcontract; (3) negligently managing the construction project at issue in this case; (4) interfering with Bunting's work under that project; and (5) failing to pay Bunting in a timely manner, or at all, for its work.  *See generally*, ECF No. 1.

Whiting-Turner counters that it did not breach the Subcontract and argues that Bunting materially breached the Subcontract by, among other things: (1) failing to provide sufficient skilled supervisors and workmen; (2) failing to cure various defaults under the Subcontract; and (3) failing to deliver various project materials.  *See* ECF No. 11 at ¶¶ 6-35.

In addition, Whiting-Turner asserts a counterclaim against third-party defendant, Travelers Casualty and Surety Company of America ("Travelers")—which issued the Performance Bond on behalf of Bunting for the construction project at issue—alleging that Travelers breached the Performance Bond by failing to perform its obligations under the Performance Bond.  *See id.* at ¶¶ 36-42.

<u>Bunting's Witnesses</u>

Relevant to the pending pre-trial motions, Bunting intends to present, among others, the following witnesses at trial:

<u>Joshua Bunting</u>:  Mr. Bunting is the President of Bunting and he has been designated as a fact and expert witness on multiple topics.  *See* ECF No. 130-2.  Bunting has provided supplemental disclosures with regard to Mr. Bunting that provides as follows:

> Bunting designates Mr. Bunting as an expert on (i) the fabrication, the assembly and the installation of metal panels, metal screens and louvers/grilles on a building façade for construction projects; (ii) the coordination, sequence

---

[1] The facts recited in this memorandum opinion are taken from the complaint (ECF No. 1); Whiting-Turner's counterclaim and third-party complaint (ECF No. 11); Whiting-Turner's motion to strike/exclude the report opinions and testimony of Randall Scholl (ECF No. 156); Whiting Turner's motion to strike/exclude the testimony and opinion of Joshua Bunting (ECF No. 130); Bunting's renewed motion *in limine* to exclude expert testimony of Brian Kent (ECF No. 129); Bunting's renewed motion for sanctions to award costs for the Reopened Discovery Period (ECF No. 152); Travelers' motion for award of costs and attorneys' fees (ECF No. 154); and the memoranda in support thereof.

and interrelation of work performed by other building façade subcontractors and how such work that is defective, deficient and/or incomplete may have on the installation of metal panels, metal screens and/or louvers/grilles; (iii) construction/project management and quality control regarding building façade construction work; and (iv) construction schedules and sequencing of building façade construction work.

*Id.* at 2.  Bunting's supplemental disclosures for Mr. Bunting also provide, in relevant part, that:

Mr. Bunting is expected to testify and provide opinion(s) (1) regarding Bunting's and The Whiting-Turner Contracting Company's ("Whiting-Turner") obligations and responsibilities under the Subcontract, including Bunting's scope of work and the Project schedules; (2) that Whiting-Turner failed to properly plan, manage, coordinate and perform its obligations as required by the Subcontract; (3) that Whiting-Turner failed to ensure that its building façade subcontractors performed their scopes of work in a timely and/or proper manner; (4) that the work installed and/or performed by Whiting-Turner's building facade subcontractors included defects and/or deficiencies with the framing, waterproofing, precast concrete panel and window work on the Project, resulting in cost and schedule impacts to Bunting; and (5) that Whiting-Turner failed to perform proper quality control of the project's building façade work and failed to adequately supervise its building façade subcontractors.   Mr. Bunting is also expected to testify regarding entitlement and quantum on Bunting's damages sought in this litigation, including Bunting's unpaid Subcontract work and Bunting's unpaid change order requests as stated in Bunting's interrogatory answers. Mr. Bunting is further expected to testify regarding entitlement and quantum on Whiting-Turner's damages sought in this litigation.

ECF No. 130-3 at 2.  In addition, Bunting's supplemental disclosures for Mr. Bunting further provide that Mr. Bunting is expected to offer the following opinions at trial:

- OPINION 1: W-T failed to properly maintain the Project schedule and coordinate the Project's building envelope work by departing from the planned sequence set forth in the Project schedules and failing to ensure timely completion of the other building envelope work to be installed ahead of BAM's metal panel work (i.e., predecessor work).

- OPINION 2: The multiple design changes to the perforated panels provided by W-T after Subcontract execution significantly interfered with and delayed Bunting's manufacturing and installation of the perforated panels.

- OPINION 3: BAM's Subcontract scope of work did not include the supply and installation of metal panels to the left and right sides of the doors and beneath the windows on the balconies at the inner courtyard at the south elevation of the Project. W-T failed to reasonably cooperate and

coordinate this work with BAM by not following the proper sequence and not issuing to BAM a "Disputed Change Request Authorization."

- OPINION 4: BAM's Subcontract scope of work did not include the supply and installation of shoe base covers for the glass railing system at the unit balconies. W-T failed to reasonably cooperate and coordinate this work with BAM by not following the proper sequence and not issuing to BAM a "Disputed Change Request Authorization."

- OPINION 5: Despite BAM bringing deficient work performed by W-T's framing subcontractor to W-T's attention, W-T's lack of diligence to resolve the deficient work significantly delayed, hindered and impacted BAM's metal panel installation.

- OPINION 6: W-T's lack of diligence to resolve deficient work installed by W-T's precast concrete subcontractor at the east and west elevations of the Project hindered, delayed and interfered with BAM's metal panel installation at the same locations.

- OPINION 7: Despite BAM bringing deficient work performed by W-T's waterproofing subcontractor to W-T's attention, W-T's failure to, and lack of diligence to, resolve the deficient work significantly delayed, hindered and impacted BAM's metal panel installation.

- OPINION 8: After Subcontract execution, the Project's design for the building envelope continually changed, resulting in BAM having to submit multiple iterations of its metal panel shop drawings. As a result, Bunting's fabrication and installation of its metal panels was significantly delayed.

- OPINION 9: Design conflicts and incomplete predecessor work prevented BAM from installing its metal panels at the ground level, retail areas and the penthouse level.

ECF No. 130-2.

Randall Scholl: Randall Scholl is a principal for the Construction Consulting Group, LLC and Bunting has designated Mr. Scholl as its damages expert in this case. *See* ECF No. 156-1 and 156-2. Mr. Scholl is expected to offer the following opinions at trial:

- OPINION 1: Whiting-Turner, as a result of my understanding of contractual obligations and standard industry practices, was required and expected to identify and track actual expenditures that were the result of any alleged default by Bunting. Based on the information provided in either the recently-produced Whiting-Turner daily logs or the Whiting-Turner damages document, Whiting-Turner failed to either document or

produce this type of documentation. Notably, Whiting-Turner's own policies and requirements for performing work on a Cost Plus basis include Whiting-Turner-signed daily timesheets. In my experience, this is a common and prudent industry practice that Whiting-Turner failed to follow in this instance.

- OPINION2: Given that Whiting-Turner knew months before the planned substantial completion of the Project that it would be backcharging Bunting, Whiting-Turner should have known that assembling and producing detailed damages causation information contemporaneously was essential to supporting and prevailing on its claims. Many contractors regularly code such costs to "rework" or "backcharge" cost codes within its cost accounting systems to simplify assembly of this information after the project or after backcharge work is completed. Based on recently produced documents, it does not appear that Whiting-Turner followed this, or a similar procedure of assigning and tracking Bunting's work scope, including disputed work to cost codes. Under applicable industry standards, Whiting-Turner should have followed the foregoing or similar procedure for assigning and tracking this work.

- OPINION 3: In addition to supplementing Bunting's forces, Whiting-Turner performed work that was disputed by Bunting as base scope work, such as the courtyard balcony panels. Whiting-Turner knew that Bunting disputed certain work scopes, but records indicate Whiting-Turner failed to track these costs separately. In fact, it cannot be determined when Bolimex performed this disputed work because of the lack of daily reports nor can the reasonableness of the costs be determined or established. Therefore, Whiting-Turner has not established these costs to a degree of reasonable certainty.

- OPINION 4: Based on the scant damages causation information to support Whiting-Turner's damages that was made available and the evident lack of information from source documents, it is clear that a significant portion of the costs alleged by Whiting-Turner and assessed to Bunting lack support and/or a causal connection to Bunting's work, and are therefore not reasonably certain and not a valid basis for a damage or loss claim award under industry standards. Unfortunately, Whiting-Turner's causation documentation is so poor that I could not venture a guess regarding which portion of Whiting-Turner's claimed costs are legitimate.

- OPINION 5: While limited to recovery of incurred costs, Whiting-Turner appears to have estimated some claimed damages. I saw no documentation in the daily logs to indicate why Whiting-Turner apparently has claimed some estimated damages as opposed to incurred costs.

- OPINION 6: Whiting-Turner's assertion that sufficient cost data has been produced to allow an accurate assessment of Whiting-Turner damages

remains false. Typically, without a Bolimex daily report and sufficient detail in such report, it is not possible to decipher the specific work performed by Bolimex on a given day and, hence, any connection to a Bunting work scope item which may make a backcharge to Bunting appropriate.

- OPINION 7: Whiting-Turner is claiming nearly $3 million in damages for costs allegedly paid to Bolimex. Yet, on February 7, 2019, after Bolimex had been working for weeks, Whiting-Turner estimated the cost to complete installation of the panels to be around $300k-$400k. Whiting-Turner also acknowledged that Bunting had notified Whiting-Turner that the Bolimex crews were damaging panels and related materials. Neither the Whiting-Turner logs nor the Whiting-Turner damages documents explain why its claimed damages exceed its own estimate by nearly ten times.

- OPINION 8: As a result, Whiting-Turner's damages claim remains unsupported, illegitimate, unreliable, not reasonably certain and should not be awarded.

ECF No. 156-2 at 3-4.

<u>Whiting-Turner's Witnesses</u>

Whiting-Turner intends to present the following two expert witnesses at trial:

<u>Paul Brough</u>:  Mr. Brough is a scheduling consultant expert who proposes to offer the following opinions at trial:

1. That Bunting was significantly behind schedule for the installation of the ACM Panels based on the Project Schedule when the notice of default was issued by Whiting-Turner to Bunting on September 12, 2018.  At that time, the predecessor work to the installation of the ACM Panels was on schedule and did not delay Bunting's installation of the ACM Panels.  Bunting was significantly behind schedule as to the installation of the ACM Panels on September 12, 2018, because Bunting failed to progress this work.

2. That between September 12, 2018, and January 15, 2019, Bunting's installation of the ACM Panels continued to be significantly behind the Project Schedule for this work.  The predecessor activities for Bunting's work remained on schedule and did not delay Bunting's installation of the ACM Panels and perforated panels. Bunting remained behind schedule because of Bunting's failure to progress this work.

ECF No. 73-2 at 2.

<u>Brian Kent</u>:  Mr. Kent is a construction management expert who proposes to offer the following opinions at trial:

1. That Bunting failed to follow the "corkscrew" method – a floor-by-floor spiral approach – for the performance of its work as part of the construction of the exterior skin of the building, contrary to the requirements for the Project and standard industry practices, thereby causing Bunting's work to be inefficient and delayed.

2. That, during the performance of its work, Bunting always had areas available to progress its work and the ability of Bunting to progress its work was not impacted by the work of predecessor trades or quality control testing, including testing and repair of the waterproofing for the exterior of the building.

3. That Bunting's failure to follow the corkscrew method and to properly manage its work and timely provide materials necessary for its work resulted in Bunting's work falling significantly behind the Project schedule.

ECF No. 95-2 at 2.

<u>Bunting's Motion For Sanctions And The Reopened Discovery Period</u>

On November 14, 2022, the Court continued the trial of this matter, and permitted Bunting to file a motion to reopen discovery, after Bunting raised a concern that Whiting-Turner had improperly withheld certain documents that relate to the damages it seeks against Bunting in this case.  ECF No. 128.  Specifically, Bunting objected to the withholding of certain Whiting-Turner daily logs ("W-T Logs") that contain daily reports prepared by contractors that are alleged to have completed Bunting's scope of work (the "Replacement/Supplemental Contractors") on the construction project at issue in this case.  And so, Bunting filed a motion for sanctions to exclude damages or reopen discovery on December 5, 2022.  ECF No. 132-1.

On May 17, 2023, the Court granted-in-part Bunting's motion for sanctions and held that: (1) the W-T Logs are directly responsive to Bunting's document requests; (2) the W-T Logs are relevant to Whiting-Turner's alleged damages; and (3) Whiting-Turner's withholding of the W-T Logs was not "substantially justified or harmless to Bunting."  ECF No. 146 at 4, 7, 8. Specifically, the Court determined that: (1) the W-T Logs are "relevant to Whiting-Turner's counterclaim and alleged damages … [a]nd so, Whiting-Turner had an obligation to produce

these documents during discovery;" (2) "Whiting-Turner has not shown that its decision to withhold the W-T logs for the Replacement/Supplemental Contractors was substantially justified or harmless to Bunting … [and] Bunting has also shown that good cause exists to reopen discovery, for a limited period, to obtain and analyze this information;" the factors that the Court considers in determining whether the withholding of the W-T Logs was substantially justified "weigh in favor of finding that Whiting-Turner's failure to disclose [the W-T Logs] was neither substantially justified, nor harmless." *Id.* at 6-8. And so, the Court directed Whiting-Turner to produce a complete set of legible W-T logs by May 26, 2022, ordered that discovery be reopened for a period of 60 days, during which "the parties shall be permitted to issu[e] written discovery and conduct depositions limited to the W-T Logs for the Replacement/Supplemental Contractors and to prepare or revise any expert reports." *Id.* at 9. In addition, the Court held-in-abeyance "Bunting's request that the Court order Whiting-Turner to pay for the costs that it will incur to conduct this additional discovery, pending the completion of the aforementioned discovery."[2] ECF No. 146 at 9.

Thereafter, the parties engaged in limited discovery related to the W-T Logs. In this regard, Bunting represents that it conducted the following discovery activities related to the W-T Logs:

- Reviewed and analyzed the W-T Logs that span nearly six months in time;

- Compared the W-T Logs to Whiting-Turner's claimed damages and prior deposition testimony;

- Reviewed and analyzed Whiting-Turner's responses to document requests and interrogatories issued by [Travelers];

- Drafted responses to interrogatories issued by Whiting-Turner;

- Took the corporate depositions of Whiting-Turner and Bolimex Construction, LLC;

- Retained and worked with an expert (Randy Scholl), who prepared a 17-page expert report that provides opinions on the W-T Logs and their effect on Whiting-Turner's alleged damages; and

---

[2] The Court held-in-abeyance Bunting's request that the Court order Whiting-Turner to pay the costs Bunting would incur during the Reopened Discovery Period. ECF No. 146 at 9.

- Defended Mr. Scholl's deposition that was taken by Whiting-Turner.

*See* ECF No. 152 at 2-3.

On August 16, 2023, the Court entered an amended pre-trial Scheduling Order that set forth a number of deadlines, including a deadline of September 29, 2023, for any additional pre-trial motions.[2]

### B.    Relevant Procedural History

On November 21, 2022, Bunting filed a renewed motion to exclude the expert testimony of Brian Kent and Whiting-Turner filed a renewed motion to exclude the testimony of Joshua Bunting.  ECF Nos. 129 and 130.  On December 5, 2022, Bunting filed a response in opposition to Whiting-Turner's renewed motion to exclude the testimony of Joshua Bunting.  ECF No. 131.  On December 5, 2022, Whiting-Turner also filed a response in opposition to Bunting's renewed motion to exclude the expert testimony of Brian Kent.  ECF No. 134.

On September 29, 2023, the parties filed additional pre-trial motions including: (1) Bunting's renewed motion for sanctions to award costs for the Reopened Discovery Period (ECF No. 152); (2) Travelers' motion for award of costs and attorneys' fees (ECF No. 154); and (3) Whiting-Turner's motion to strike/exclude expert testimony of Randal Scholl (ECF No. 156).  On October 20, 2023, Whiting-Turner filed a consolidated response in opposition to Bunting's renewed motion for sanctions and Travelers' motion for costs and attorneys' fees.  ECF No. 159.

On October 20, 2023, Bunting and Travelers filed their respective responses in opposition to Whiting-Turner's motion to strike/exclude expert testimony of Randal Scholl.  ECF Nos. 157-58.  On November 3, 2023, Whiting-Turner filed replies in support of its motion to strike/exclude expert testimony of Randal Scholl.  ECF Nos. 161-62.  On November 3, 2023, Bunting also filed a reply in support of its renewed motion for sanctions and Travelers filed a reply in support of its motion for costs and attorneys' fees.  ECF No. 160 and 163.

These motions having been fully briefed, the Court resolves the pending motions.

## III.   LEGAL STANDARDS

### A.    Motions *In Limine*

Motions *in limine* aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial.  *See Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citations omitted).  "A motion *in limine* to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence."  *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 470 (S.D.N.Y. 2005) (internal citations omitted). The Court has wide discretion in rulings governing trial, including whether to preclude or admit evidence or to prohibit comment, arguments, or questioning.  *See, e.g.*, *Herring v. New York*, 422 U.S. 853, 862 (1975) ("The presiding judge must be and is given great latitude in . . . ensur[ing] that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial . . . he must have broad discretion."); *see also United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004) ("The decision to admit evidence at trial is committed to the sound discretion of the district court and is subject to reversal only if the court abuses that discretion.").

### B.      Expert Testimony

The proponent of expert testimony "bears the burden of establishing its admissibility." *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 97 (D. Md. 2020).  In this regard, Fed. R. Evid. 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in  issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Supreme Court has recognized that Fed. R. Evid. 702 requires district courts to perform a critical "gatekeeping" function concerning the admissibility of expert scientific evidence.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1998).  Given this, it is the Court's responsibility to "'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597).

Under *Daubert*, a Fed. R. Evid. 702 evidentiary inquiry focuses on two threshold inquiries: reliability and relevance.  *See Daubert*, 509 U.S. at 599.  First, the "reliability" component requires

that this Court "ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'" *Nease*, 848 F.3d at 229 (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). Second, the "relevance" component requires that the Court find that the proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. And so, "if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021).

In addition, Fed. R. Evid. 704(a) permits the Court to admit expert testimony that "embraces an ultimate issue" to be decided by the trier of fact. Fed. R. Evid. 704(a). But, the United States Court of Appeals for the Fourth Circuit has held that "testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) (citations omitted). And so, expert witnesses may not testify about the proper interpretation of applicable domestic law. *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986), *abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622 (1988).

### C.      Fed. R. Civ. P. 26(a)(2)(C)

Fed. R. Civ. P. 26(a)(2)(C) requires that the disclosure statement for a witness who does not need to provide a written report must include "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705, and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). If a party fails to satisfy these disclosure requirements, the party is "not allowed to use that information or witness to supply evidence on a motion, at a hearing or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1)

### D.      Fed. R. Civ. P. 37(d) And Attorneys' Fees

Lastly, under Rule 37(d) of the Federal Rules of Civil Procedure, the Court has wide discretion to impose sanctions if a party fails to comply with its discovery orders. Fed. R. Civ. P. 37(d); *Mutual Federal Sav. and Loan Ass'n v. Richards & Associates, Inc.*, 872 F.2d 88, 92 (4th Cir. 1989); *see also S. States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003). In this regard, Rule 37 provides that, "[i]f a party fails to provide information or

identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  And so, once a Rule 37 violation has been found, the non-disclosing party must show that the failure was substantially justified or harmless.  *Id.*; *see also Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014); *Al-Sabah v. Agbodjogbe*, No. CV SAG-17-730, 2020 WL 134369, at *1 (D. Md. Jan. 13, 2020).

The United States Court of Appeals for the Fourth Circuit has identified five factors that the Court must consider in determining whether the failure to produce documents or information in discovery was substantially justified or harmless: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. *S. States Rack & Fixture*, 318 F.3d at 597.  The Court need not expressly consider each of these factors.  *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 330 (4th Cir. 2011).  Nor does the Court need to find "bad faith or callous disregard of the discovery rules" to impose the sanctions.  *S. States Rack & Fixture*, 318 F.3d at 596.

In addition, when determining whether to award attorneys' fees and costs the Court considers whether such fees and cost are reasonable.  "In calculating an award of attorneys' fees, the Court must determine the lodestar amount, defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'" *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (citing *Grissom v. The Mills Corp.*, 549 F. 3d 313, 320–21 (4th Cir. 2008); *Plyler v. Evatt*, 902 F. 2d 273, 277 (4th Cir. 1990)).  An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984); *see Thompson v. HUD*, No. 95–309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (same).  And so, this Court has established rates that are presumptively reasonable for lodestar calculations in Appendix B to its Local Rules.  *See* L.R. App. B (D. Md. 2021).

## IV.   LEGAL ANALYSIS

The parties have filed five pre-trial motions related to the evidence and proposed testimony in this case.  *See generally*, ECF Nos. 129, 130, 152, 154 and 156. The Court resolves these motions below.

## A.      The Court Declines To Exclude The Expert Testimony Of Randall Scholl

First, Whiting-Turner seeks to exclude the report, opinions and testimony of Bunting's damages expert, Randall Scholl, upon the grounds that Mr. Scholl's expert testimony and report are untimely, contrary to the Court's Discovery Order, and/or unreliable.  For the reasons that follow, the Court GRANTS-in-PART and DENIES-in-PART Whiting-Turner's motion.

Under Rule 702, trial judges act as gatekeepers to "ensure that any and all scientific testimony . . . is not only relevant, but reliable."  *Daubert*, 509 U.S. at 589.  "The proponent of the testimony must establish its admissibility by a preponderance of the evidence and the trial judge is assigned the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Cady v. Ride-Away Handicap Equip. Corp.*, 702 F. App'x 120, 124 (4th Cir. 2017) (cleaned up).

If the Court determines a witness is qualified to render an expert opinion on the subject matter, the Court must also determine whether the proffered opinion is valid and reliable.  *Newman v. Motorola, Inc.*, 218 F. Supp. 2d 769, 772 (D. Md. 2002) (citing *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000)).  "[I]f the witness is relying solely or primarily on experience, then the witness must explain how the experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  *JFJ Toys v. Sears Holding Corp.*, 237 F. Supp. 3d 311, 322 (D. Md.2017) (quoting Fed. R. Evid. 702, Advisory Comm. Notes).  And so, a reliable expert opinion may not be based on "belief or speculation, and inferences must be derived using scientific or other valid methods."  *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999).

In addition, the proffered evidence must "help the trier of fact, which is generally a question of relevance, or 'fit:' assuming the evidence is reliable, does it apply to the facts in the individual case under consideration."  *Newman*, 218 F. Supp. 2d at 772 (citing *Barnette*, 211 F.3d at 815); *see also JFJ Toys*, 237 F. Supp. 3d at 324.  Given this, expert opinions that merely recite a legal standard and draw legal conclusions by applying law to the facts are generally inadmissible.  *Id.*

Lastly, the Federal Rules provide for the mandatory disclosure of expert witnesses and their opinions in a timely manner.  *See* Fed. R. Civ. P. 26(a) ("a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."); *see also* Fed. R. Civ. P. 26(a)(2)(D) (Disclosure of expert testimony must be

14

made "at the times and in the sequences that the court orders."). And so, Fed. R. Civ. P. 37(c) provides that failure to identify information or a witness as required by Rule 26(a) means the party is not permitted to use that information or witness at trial unless the failure was substantially justified or is harmless. *See S. States Rack & Fixture, Inc.*, 318 F.3d at 595. There are two exceptions to the general rule excluding evidence that a party seeks to offer but has failed to properly disclose: (1) when the failure to disclose is 'substantially justified,' and (2) when the nondisclosure is 'harmless.'" *Id.* at 596.

Whiting-Turner largely objects to the admission of Mr. Scholl's expert testimony and report upon the grounds that his expert report and opinions are untimely. ECF No. 156-1 at 16-17. As Whiting-Turner correctly observes, the Court's Scheduling Order in this matter required that the parties make their respective expert disclosures by March 26, 2021. ECF No. 49. Pursuant to that Order, discovery closed on November 20, 2020. *See id.* But, on May 17, 2023, the Court reopened discovery for the limited purpose of allowing Plaintiffs to obtain and review certain W-T Logs that had not been produced by Whiting-Turner the original discovery period. ECF No. 147 at 8.

The Court's Discovery Order provides that "the parties shall be permitted to issu[e] written discovery and conduct depositions limited to the W-T Logs for the replacement/Supplemental Contractors and to prepare or revise any expert reports," during the Reopened Discovery Period. *Id.* at 9. And so, the Court's Discovery Order allowed for the preparation of expert reports related to the W-T Logs. *Id.*

Bunting has also shown that the W-T Logs produced in connection with the Reopened Discovery Period are closely relate to Whiting-Turner's damages documents and damages claim in this matter. Mr. Scholl testified during his deposition that he relied upon the W-T Logs in preparing his expert report and that he could not have reached the opinions contained in that report without having the opportunity to review the W-T Logs. ECF No. 156-3, Scholl Dep. at 135:3-10.

Given these uncontested facts and the Court's Discovery Order, the Court is satisfied that Mr. Scholl's expert designation, report and opinion are timely and fall within the limited scope of the Reopened Discovery Period. And so, the Court will not exclude Mr. Scholl's report, opinions testimony at trial upon the basis that they are untimely or exceeds the scope of the Court's Discovery Order.

Whiting-Turner's arguments for excluding certain portions of Mr. Scholl's expert opinion are also largely unpersuasive. Whiting-Turner seeks to exclude certain portions of Mr. Scholl's expert opinions upon the grounds that: (1) Opinions 1-3 lack foundation; (2) Opinions 4 and 7 are improperly based upon facts and (3) Opinions 1, 6, 7 and 8 are legal conclusions. *See generally*, ECF No. 156-1.

In this regard, Whiting-Turner argues that the Court should exclude Opinion 2, which opines that Whiting-Turner should have used codes to track expenses, because Mr. Scholl did not rely on any industry standards and he admitted that there are no industry standards that require cost codes in forming this opinion. ECF No. 156-1 at 24. But, a careful reading of Mr. Scholl's deposition testimony shows that he confirmed that cost codes is information that "most people in the industry would anticipate seeing in that daily report." ECF No. 156-3, Scholl Dep. at 20:19-21:6.

Mr. Scholl also states in his expert report that he relied upon a well-known treatise in addressing the actual cost method and he cites to *Calculating Construction Damages*; William Schwartzkopf, John J. McNamara, Julian F. Hoffar; ISBN 0-471-54703-4, which has been cited by several courts. ECF No. 156-2 at 14. Given this, the Court is satisfied that Mr. Scholl's Opinions 1, 2 and 3 have a sufficient foundation.

Whiting-Turner also argues without persuasion that Mr. Scholl's Opinions 4 and 7, which generally opine that Whiting-Turner's claimed damages amounts, based upon work performed by Bunting and Bilomex, are unfounded and should be struck, because these opinions simply re-state facts provided by Joshua Bunting. ECF No. 156-1 at 21-22. The Court disagrees. A careful review of Mr. Scholl's expert report and deposition testimony makes clear that he identified the W-T Logs and the Whiting-Turner damages documents as the source documents that he used to prepare his expert report. ECF No. 156-3, Scholl Dep at 18:9-12. Mr. Scholl's deposition testimony also makes clear that he considered and relied upon other information beyond the views of Joshua Bunting to form his opinions, including the Subcontract and files relating to the out-of-scope work. *Id.* at 31:22- 32:20; *see also* ECF No. 156-2 at 2.

Mr. Scholl may also reasonably rely upon certain facts that Mr. Bunting has provided to him in forming his expert opinion. *Tassi v. Holder*, 660 F.3d 710, 721 (4th Cir. 2011) (an expert witness "is entitled to rely on factual underpinnings—including those based on hearsay—that are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences

upon the subject.'") (quoting Fed. R. Evid. 703). And so, the Court is satisfied that Mr. Scholls Opinions 4 and 7 are formed based upon his own independent analysis.

Whiting-Turner's argument that Opinion 7 simply summarizes a project email and could have been provided years ago is also unavailing. ECF No. 156-1 at 11, 23. As discussed above, Mr. Scholl repeatedly references the W-T Logs in his expert report and makes clear that he analyzed these documents to reach this opinion. ECF No. 156-3, Scholl Dep. at 18:9-12. Given this, the Court also declines to exclude Opinions 4 and 7 at trial.

Whiting-Turner is, however, on firmer ground in arguing that portions of Opinion 8 should be excluded, because this opinion contains a legal conclusion. In Opinion 8, Mr. Scholl states that Whiting-Turner's damages claim "remains unsupported, illegitimate, unreliable, not reasonably certain and should not be awarded." ECF No. 156-2 at 4. The Court agrees with Whiting-Turner that Mr. Scholl's view that Whiting-Turner's damages claims "remains unsupported, illegitimate, unreliable, not reasonably certain and should not be awarded" is a legal conclusion that touches upon the ultimate issue in this case. And so, the Court will strike this portion of Opinion 8.

The Court does not, however, read Opinions 1, 6 and 7 to state a legal conclusion. And so, the Court will not strike these opinions on that basis.

Because Mr. Scholl's expert report, opinions and testimony are not untimely, or contrary to the Court's Discovery Order, the Court will not exclude his testimony at trial. But the Court will strike a portion of Opinion 8, because it offers a legal conclusion. And so, the Court GRANTS -IN-PART and DENIES-IN-PART Whiting-Turner's motion to exclude.

**B.      Bunting Must Further Supplement The Disclosures For Joshua Bunting**

Whiting-Turner also renews its request to strike the testimony of Joshua Bunting, upon the grounds that the initial disclosures, rebuttal disclosures, and the supplemental disclosures for Mr. Bunting: (1) fail to identify Mr. Bunting's expert opinions; (2) fail to describe the factual basis for those opinions; and (3) offer new opinions. *See generally*, ECF No. 30. For the reasons that follow, Bunting must further supplement its disclosures for this witness to provide the factual basis for Opinions 2, 3 and 4. Bunting's failure to promptly do so will result in the testimony being excluded at trial.

Fed. R. Civ. P. 26(a)(2)(C) requires the disclosure of an expert witness who is exempt from providing a written report, such as Mr. Bunting, to state: "(i) the subject matter on which the

17

witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." As the Court previously held, Bunting's disclosures for Mr. Bunting have not been sufficient. And so, the Court previously directed Bunting to supplement its disclosures for Mr. Bunting, given several concerns raised by Whiting-Turner. ECF No. 121 at 16.

Whiting-Turner argues with some persuasion that Bunting has not adequately addressed these concerns in supplemental disclosures for Mr. Bunting. Specifically, Whiting-Turner argues that: (1) Opinion 2 should be struck, because it is both a new opinion and the disclosures fail to provide the factual basis for the opinion; (2) Opinions 3 and 4 should be struck, because they are new opinions and fail to provide the factual basis for these opinions; (3) Opinion 7 should be struck, because it fails to provide with any specificity the nature of the opinion, and any factual basis for the opinion; and (4) Opinions 8 and 9 should be struck, because they are new opinions and Bunting fails to provide the factual basis for these opinions. *See generally*, ECF No. 130.

After carefully reviewing the supplemental disclosures for Joshua Bunting, the Court is satisfied that Opinions 7, 8 and 9 are not new opinions and that Bunting has provided sufficient factual basis for these opinions. Opinion 7 states that: "Despite Bunting bringing deficient work performed by W-T's waterproofing subcontractor to W-T's attention, W-T's failure to, and lack of diligence to, resolve the deficient work significantly delayed, hindered and impacted Bunting's metal panel installation." ECF No. 130-2 at 8. Bunting lists this opinion under the following topics from its supplemental expert disclosures for Mr. Bunting:

> (3) Whiting-Turner failed to ensure that its building façade subcontractors performed their scopes of work in a timely and/or proper manner; (4) the work installed and/or performed by Whiting-Turner's building facade subcontractors included defects and/or deficiencies with the framing, waterproofing, precast concrete panel and window work on the Project, resulting in cost and schedule impacts to Bunting.

ECF No. 130-2 at 6. The Court is satisfied that this opinion is not new, because it addresses why Joshua Bunting believes that Whiting-Turner failed to ensure that its building façade subcontractors performed their work in a timely manner and the resulting in cost and schedule impacts to Bunting. The disclosure for this opinion also includes 12 subparts providing information and citations to documents to support Opinion 7 including:

- On or about June 28, 2018, Bunting submitted NCW-0005 to W-T with

photographs, videos and other documents demonstrating that the previously installed waterproofing was incomplete or not applied within specified tolerances. As a result, Bunting's installation crews correctly stopped their work as they were prevented from installing the metal panel work.

- The video files show the deficient condition of the waterproofing before Bunting started installing its work. Specifically, the videos demonstrate that water is behind the waterproofing and is actually being trapped there on the inside. In the trade sequence established in W-T's schedules, the waterproofing work was to occur before the window wall and metal panel work could be installed.

*Id.* at 8. And so, Whiting-Turner has also not shown that Opinion 7 lacks a factual basis and should be struck.

The Court is also satisfied that Opinions 8 and 9 are not new opinions. Opinion 8 states that "[a]fter Subcontract execution, the Project's design for the building envelope continually changed, resulting in Bunting having to submit multiple iterations of its metal panel shop drawings. As a result, Bunting's fabrication and installation of its metal panels was significantly delayed." *Id.* at 9. Opinion 9 states that "[d]esign conflicts and incomplete predecessor work prevented Bunting from installing its metal panels at the ground level, retail areas and the penthouse level." *Id.* at 10. These two opinions fall within the scope of paragraph 5 of Bunting's October 2022 supplemental disclosures regarding Whiting-Turner's alleged failure to perform proper quality control of the Project's building facade work. *Id.*

The Court is similarly satisfied that Opinions 2, 3 and 4 are not new opinions that fall beyond the scope of Bunting's expert disclosures. Opinion 2 states that "[t]he multiple design changes to the perforated panels provided by Whiting-Turner after Subcontract execution significantly interfered with and delayed Bunting's manufacturing and installation of the perforated panels." *See id.* at 1-2. Bunting lists this opinion under the following topics from its expert disclosures for Mr. Bunting:

(1) Bunting's and W-T's obligations and responsibilities under the Subcontract, including Bunting's scope of work and the Project schedules; (2) Whiting-Turner failed to properly plan, manage, coordinate and perform its obligations as required by the Subcontract;

*Id.* at 3. As Bunting correctly observes, Whiting-Turner was obligated to provide the overall Project design to Bunting under the terms of the Subcontract. And so, the Court does not read Opinion 2 to be a new opinion.

Bunting has also shown that Opinions 3 and 4 are not new. Opinion 3 states that "Bunting's Subcontract scope of work did not include the supply and installation of metal panels to the left and right sides of the doors and beneath the windows on the balconies at the inner courtyard at the south elevation of the Project. W-T failed to reasonably cooperate and coordinate this work with Bunting by not following the proper sequence and not issuing to Bunting a "Disputed Change Request Authorization." *Id.* at 5. Opinion 4 states that "Bunting's Subcontract scope of work did not include the supply and installation of shoe base covers for the glass railing system at the unit balconies. W-T failed to reasonably cooperate and coordinate this work with Bunting by not following the proper sequence and not issuing to Bunting a 'Disputed Change Request Authorization.'" *Id.* at 6. Notably, Bunting's expert disclosures included the following pertinent topics: Bunting's and W-T's obligations and responsibilities under the Subcontract, including Bunting's scope of work and the Project schedules; Whiting-Turner failed to properly plan, manage, coordinate and perform its obligations as required by the Subcontract. *Id.* at 3, 5-6. And so, the Court is satisfied that Opinions 3 and 4 fall within the scope of these topics, because they address Bunting's scope of work.

The Court agrees, however, with Whiting-Turner that Bunting has not provided sufficient factual background for Opinions 2, 3, 4, 5, 7 and 8 with regards to the nature and length of the delay that Mr. Bunting maintains Whiting-Turner caused in connection with the construction Project at issue. Bunting has also not provided sufficient information about the documents and information that Mr. Bunting relies upon to support Opinions 2 and 4. In addition, Bunting fails to provide sufficient information about the documents and information that Mr. Bunting relies upon to form Opinions 3 and 4 regarding the supply and installation of metal panels and shoe base covers for the glass railing system.

Given this, the Court **DIRECTS** Bunting to further supplement the expert disclosures for Mr. Bunting to provide the following information on or before **December 20, 2023**:

Opinions 2-5,7 and 8: the nature, reason and length of the delay that Mr. Bunting maintains Whiting-Turner caused in connection with the construction Project.

Opinion 2: the factual basis and citations to any documents relied upon to support paragraphs a, e, g and h;

Opinion 3: the relied upon Project drawings;

Opinion 4: the factual basis and citation to any documents relied upon to support paragraphs a-c and e, including the specific contract drawings.

And so, the Court GRANTS -IN-PART and DENIES-IN-PART Whiting-Turner's motion to strike/exclude the testimony of Joshua Bunting.

### C.     The Court Declines To Exclude The Testimony Of Brian Kent

Turning to Bunting's pre-trial motions, Bunting first renews its motion to exclude the expert testimony of Brian Kent upon the grounds that: (1) Mr. Kent's opinions are unreliable, and (2) Whiting-Turner's decision to withhold the W-T logs has significantly prejudiced Bunting. *See generally*, ECF No. 129. For the reasons that follow, the Court GRANTS-in-PART and DENIES-in-PART Bunting's motion.

"[T]he test for exclusion of an expert is a strict one." *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989). "Rule 37(c)(1) provides two exceptions to the general rule excluding evidence that a party seeks to offer but has failed to properly disclose: (1) when the failure to disclose is 'substantially justified,' and (2) when the nondisclosure is 'harmless.'" *S. States Rack & Fixture*, 318 F.3d at 595. To determine whether the non-disclosure of evidence was substantially justified or harmless for the purpose of a Rule 37(c)(1) exclusion analysis, the following five factor test should be applied: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." *Id.* at 597.

Bunting seeks to exclude the expert testimony of Mr. Kent upon the grounds that the newly produced W-T Logs and related documents confirm that: (1) Mr. Kent's opinions are unreliable, and (2) Whiting-Turner's decision to withhold these critical documents until it was ordered to produce them by the Court has significantly prejudiced Bunting. *See generally*, ECF No. 129. Alternatively, Bunting seeks to re-open discovery to allow it to conduct a second deposition of Mr. Kent.

While the Court agrees with Bunting that the withholding of the W-T Logs was not substantially justified, any prejudice to Bunting can be remedied here, because Whiting-Turner represented during the December 6, 2023, hearing that it would  identify the flash notes and W-T Logs that Mr. Kent relied upon in preparing his expert report and the Court has reopened discovery

in this case so that Bunting can re-depose Mr. Kent.  And so, Bunting will have the information that it needs to prepare its cross-examination of Mr. Kent in advance of trial.

The Court has already determined that Mr. Kent's opinion is important to its case, and will aid the Court with the understanding of the evidence.  *See* ECF No. 131 at 12; *see also Md. Shall Issue, Inc. v. Hogan*, No. ELH-16-3311, 2021 WL 3172273, *9 (D. Md. July 27, 2021). "Helpfulness to the trier of fact is "the 'touchstone'" under Rule 702.  *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (citation omitted).   The Court has already determined that Mr. Kent's opinions, which were based on his experience and his personal observations of the project and Bunting's work thereon, are reliable.  ECF No. 121 at 12.  And so, the Court will not exclude his testimony.

For these reasons, the Court **DIRECTS** Whiting-Turner to identify the flash notes and W-T Logs that Mr. Kent relied upon to prepare his expert report on or before **December 20, 2023**.  The Court also **GRANTS** Bunting's request to reopen discovery for the purpose of conducting the deposition of Mr. Kent related to his expert report and the subject flash notes and W-T Logs.

### D.    The Court Grants Bunting's Motion For Sanctions

Bunting has also filed a renewed motion for sanctions, seeking to recoup the attorneys' fees, expert fees and certain costs, in the amount of $53,304.40, that it incurred during the Reopened Discovery Period.  ECF No. 152-1.  The requested amount includes: (1) attorneys' fees in the amount of $27,570.00; (2) costs in the amount of $2,840.65; and (3) expert fees in the amount of $22,893.75.  *Id.* at 10.  For the reasons that follow the Court will GRANT-in-PART and DENT-in-PART this motion.

When a responding party fails to produce documents in response to document requests, the issuing party may move for an order compelling production.  Fed. R. Civ. P. 37(a)(3)(B).  In addition, when a responding party fails to comply with its ongoing duty to supplement its document production, such failure to supplement is sanctionable.  Fed. R. Civ. P. 26(e)(1), 37(c)(1).  Once a Rule 37 violation is established, the non-compliant party has the burden to demonstrate that the "failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); *see also Al-Sabah*, 2020 WL 134369, at *1.  And so, "the Court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorneys' fees, caused by the failure, unless the failure was substantially justified or other circumstances

make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3) (emphasis added); Fed. R. Civ. P. 37(a)(5).

In determining whether to award attorneys' fees and costs here, the Court also considers whether such fees and cost are reasonable. "In calculating an award of attorneys' fees, the Court must determine the lodestar amount, defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'" *Lopez*, 838 F. Supp. 2d at 348 (citing *Grissom*, 549 F. 3d 313, 320–21 (4th Cir. 2008); *Plyler*, 902 F. 2d 273 at 277). An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 890 n.11; *see Thompson*, 2002 WL 31777631, at *6 n. 18 (same). And so, this Court has established rates that are presumptively reasonable for lodestar calculations in Appendix B to its Local Rules. *See* L.R. App. B (D. Md. 2021).

Bunting has shown that Whiting-Turner should pay its reasonable attorneys' fees and costs incurred during the Reopened Discovery Period for several reasons. First, the Court has already determined that Whiting-Turner's decision to withhold the W-T Logs during the original discovery period was neither substantially justified nor harmless, and that "good cause existed to reopen discovery." ECF No. 146 at 6-7, 9. As the Court held in the May 17, 2023, memorandum opinion, the W-T Logs are relevant to Whiting-Turner's counterclaim and alleged damages in this action, because these documents identify the specific work performed by the Replacement/Supplemental Contractors that Whiting-Turner hired after terminating Bunting's Subcontract. ECF No. 132-1 at 8; ECF No. 137 at 6.

Whiting-Turner's explanation for its failure to produce these documents during the original discovery period for this case is also not persuasive. Whiting-Turner fails to explain why it did not disclose these documents until two years after the close of discovery. Given this, the Court must consider the appropriate sanction for Whiting-Turner's failure to comply with its discovery obligations. Fed. R. Civ. P. 37.

Second, the attorneys' fees sought by Bunting are reasonable, given the nature and scope of the Reopened Discovery Period. During the Reopened Discovery Period, Bunting performed numerous discovery activities related to the W-T Logs, including, but not limited to, the following activities:

- Reviewed and analyzed the W-T Logs that span nearly six months in time;

- Compared the W-T Logs to Whiting-Turner's claimed damages and prior deposition testimony;

- Reviewed and analyzed Whiting-Turner's responses to document requests and interrogatories issued by [Travelers];

- Drafted responses to interrogatories issued by Whiting-Turner;

- Took the corporate depositions of Whiting-Turner and Bolimex Construction, LLC;

- Retained and worked with an expert (Randy Scholl), who prepared a 17-page expert report that provides opinions on the W-T Logs and their effect on Whiting-Turner's alleged damages; and

- Defended Mr. Scholl's deposition that was taken by Whiting-Turner.

*See* ECF No. 152 at 2-3.  Bunting was aided in these tasks by two experienced attorneys, Robert Windus and David Todd.  *See* ECF No. 152-5; ECF No. 152-6.  These attorneys completed 91.6 hours of work during the 60-day Reopened Discovery Period.  *See id.* at ¶ 5; see also ECF No. 152-1 at 10.  The hours billed are reasonable, given the scope of and length of the Reopened Discovery Period and the significance of the W-T Logs to the issues in this case.

The Court observes that both of these attorneys are experienced lawyers and they have billed at rates that the Court presumes to be reasonable.  Mr. Windus, who was admitted to the bar in 1991, charges a discounted rate of $350.00 an hour for this matter.  ECF No. 152-5, Windus Aff. at ¶¶ 3, 4.  Under Md. Loc. R., App. B, the presumptively reasonable rate for his services is $300-$475.

Mr. Todd, who was admitted to the bar in 2017, charges a discounted rate of $250.00 an hour for this matter.  ECF No. 152-6, Todd Aff. at ¶¶ 3, 4.  Under D. Md. Loc. R., App. B, the presumptively reasonable rate for his services is $165-$300.  Because the requested attorneys' fees fall within the presumptively reasonable ranges that the Court adopts, the requested rates are reasonable.  *See Green v. Cent. Towing, Inc.*, No. 8:21-CV-00030-PX, 2023 WL 2788623, at *2 (D. Md. Apr. 5, 2023) (where the fees charged were "within the presumptively reasonable ranges … the Court easily adopts the requested rates[.]").

The Court is not, however persuaded that Whiting-Turner should pay the fees associated with the preparation of Mr. Scholl's expert report.  While the Court finds that Mr. Scholl relied

upon the W-T Logs in preparing this report, and in forming his expert opinions, Bunting made the decision to retain his services as a damages expert during the Reopened Discovery Period for reasons that are not limited to the W-T logs.  And so, the Court will not order Whiting-Turner to pay the expert fees incurred by Mr. Scholl during the Reopened Discovery Period.[3]

Because the Court concludes that the withholding of the W-T logs was neither harmless nor substantially justified, and that Bunting has shown that the attorneys' fees and costs that it incurred during the Reopened Discovery Period are reasonable, the Court GRANTS-in-PART and DENIES-in-PART Bunting's renewed motion for sanctions to recover attorneys' fees and costs.

Whiting-Turner shall pay Bunting's reasonable attorneys' fees in the amount of $27,570.00 and reasonable costs in the amount of $2,840.65 for expenses incurred during the Reopened Discovery Period.

### E.    The Court Grants Travelers' Motion For Costs

For similar reasons, the Court will GRANT Travelers' motion for attorneys' fees.  Travelers seeks to recoup attorneys' fees in the amount of $10,347.00 from Whiting-Turner, for work that its attorneys performed during the Reopened Discovery Period.  ECF No. 154.

As discussed above, "the Court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorneys' fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3) (emphasis added); Fed. R. Civ. P. 37(a)(5).  In addition, "[i]n calculating an award of attorneys' fees, the Court must determine the lodestar amount, defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'"  *Lopez*, 838 F. Supp. 2d 346,

---

[3] Bunting has shown that its discovery during the Reopened Discovery Period was based upon, and informed by, the belatedly disclosed W-T Logs. For example, Mr. Scholl testified during his expert deposition that he could not have prepared his expert report and reached his opinions without the W-T Logs. ECF No. 156-3, Scholl Tr. at 18:9-12.  Mr. Scholl also repeatedly cites to, and relies upon the W-T Logs, in his expert report.  See generally, ECF No. 156-2.  Bunting also explains that it could not have effectively conducted the deposition of Bolimex without the Bolimex daily reports, which were produced by Whiting-Turner in May 2023.  As Bunting explains, these reports contain new and important information that provide Bunting and Travelers with critical defenses to Whiting-Turner's claimed damages.  ECF No. 160 at 11-12.  In addition, while the Court agrees with Whiting-Turner that Bunting was able to address certain aspects of the topics covered during the second Whiting-Turner corporate deposition prior to the Reopened Discovery Period, the deposition transcript makes clear that Bunting focused primarily on the W-T Logs and the daily reports prepared by the Replacement/Supplemental Contractors, including Bolimex during this deposition. *See generally*, ECF No. 159-4, Whiting-Turner Dep.

348 (D. Md. 2012) (*citing Grissom*, 549 F. 3d at 320-21; *Plyler*, 902 F. 2d at 277.  An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum*, 465 U.S. at 890 n.11; *see Thompson*, 2002 WL 31777631, at *6 n.18 (same).  And so, this Court has established rates that are presumptively reasonable for lodestar calculations in Appendix B to its Local Rules.  *See* L.R. App. B (D. Md. 2021).

In this case, Travelers seeks to recoup $10,347.00 for the work performed by three attorneys who aided it during the Reopened Discovery Period.  In this regard, Travelers represents to the Court that three attorneys with the law firm White and Williams, LLP provided representation to Travelers: David D. Gilliss, Joel P. Williams, and Robert H. Kline.  *See* ECF No. 154-3, Williams Aff. at ¶¶ 2-4.  Each of these attorneys is experienced counsel in construction surety matters.  ECF No. 154-1 at 6.  Travelers has also provided a fee request time entries document showing that these attorneys collectively spent 40.6 hours performing the following tasks during the re-opened discovery period:

> (1) review W-T Logs and other newly produced documents;
>
> (2) propound interrogatories and requests for production of documents;
>
> (3) conduct depositions;
>
> (4) participate in pre-trial scheduling conference

*See* ECF No. 154-5.  In addition, Travelers represents that the hourly rates for both Mr. Gilliss and Mr. Williams, who have more than 20 years legal experience, is $270 per hour.  ECF No. 154-1 at 6.  This rate is less than the guideline range for hourly rates of attorneys admitted for over 20 years as described in Appendix B of the Court's Local Rules.  *See* L.R. App. B (D. Md. 2021).  And so, the rate is presumptively reasonable. *Id.*

Travelers further represents that the hourly rate for its third attorney, Mr. Kline's is $240 per hour, and that Mr. Kline has 8 years of legal experience.  *Id.*  This hourly rate also falls within the range for hourly rates of attorneys admitted for five to eight years described in Appendix B of the Court's Local Rules.  *See* L.R. App. B (D. Md. 2021).  And so, this rate is also presumptively reasonable.

For the reasons previously stated, the Court is satisfied that this additional discovery was warranted and falls within the scope of the Court's Discovery Order related to the Reopened Discovery Period.  Because the Court concludes that W-T's withholding was neither harmless nor substantially justified, and Travelers has shown that the attorneys' fees and costs that it incurred during the Reopened Discovery Period are reasonable, the Court also GRANTS Travelers' motion for attorneys' fees and costs.

The Court **DIRECTS** Whiting-Turner to pay Traveler's reasonable attorneys' fees and costs in the amount of $10,347.00.

## V.   CONCLUSION

For the forgoing reasons, the Court:

1. **GRANTS-in-PART and DENIES-in-PART** Whiting Turner's motion to strike/excluded reports, opinions and testimony of Randall Scholl (ECF No. 156);

2. **GRANTS-in-PART and DENIES-in-PART** Whiting Turner's renewed motion to strike/excluded the testimony and opinion of Joshua Bunting (ECF No. 130);

3. **GRANTS-in-PART and DENIES-in-PART** Bunting's renewed motion *in limine* to exclude the expert testimony of Brian Kent (ECF No. 129);

4. **GRANTS-in-PART and DENIES-in-PART** Bunting's renewed motion for sanctions to award costs for the Reopened Discovery Period (ECF No. 152); and

5. **GRANTS** Travelers motion for award of costs and attorney's fees (ECF No. 154).

It is further **ORDERED** that:

1. Whiting Turner shall pay Bunting's reasonable attorneys' fees in the amount of $27,570.00 and costs in the amount of $2,840.65 for expenses incurred during the Reopened Discovery Period; and

2. Whiting-Turner shall pay Travelers' reasonable attorneys' fees and costs in the amount of $10,347.00 for expenses incurred during the Reopened Discovery Period.

27

In addition, the Court:

3. **DIRECTS** Whiting-Turner to identify the flash notes and W-T Logs that Mr. Kent relied upon to prepare his expert report on or before **December 20, 2023**;

4. **DIRECTS** Bunting to further supplement the expert disclosures for Mr. Bunting to provide the following information to Whiting-Turner on or before **December 20, 2023**:

   a. Opinions 2-5,7 and 8: the nature, reason and length of the delay that Mr. Bunting maintains Whiting-Turner caused in connection with the construction Project.

   b. Opinion 2: the factual basis and citations to any documents relied upon to support paragraphs a, e, g and h;

   c. Opinion 3: the relied upon Project drawings;

   d. Opinion 4: the factual basis and citation to any documents relied upon to support paragraphs a-c and e, including the specific contract drawings

5. **REOPENS** discovery for the purpose of allowing Bunting to conduct the deposition of Brian Kent and to allow Whiting-Turner to conduct the deposition of Joshua Bunting.

The parties shall **FILE** a joint status report, on or before **December 12, 2023**, stating their respective views regarding the length of the second Reopened Discovery Period and proposing any modifications to the Pre-trial Scheduling Order.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge